NATCHEZ, JACKSON & COLUMBUS RAILROAD CO. *v.* JAMES W. LAMBERT, TAX-COLLECTOR.

1. EXEMPTION FROM TAXATION. *Legislative power. Mobile & North-western Railroad. Charter.*

Section 21 of the act of July 20, 1870 (Laws, p. 255), incorporating the Mobile & North-western Railroad Company, providing that all taxes to which it might be subject for thirty years should be applied to payment for constructing the road or debts incurred therefor, unless its annual net earnings should exceed eight per cent., and that the affidavit of the president or cashier that such application had been made, should be accepted by tax-collectors in lieu of money for such taxes, was, in effect, an exemption from taxation upon the conditions named, and this exemption the legislature had the power to confer, but not to make irrepealable. *Mississippi Mills* v. *Cook*, 56 Miss., 40.

2. SAME. *Natchez, Jackson & Columbus Railroad Company. Acts 1878 and 1890.*

By the acts of August 8, 1870 (Laws, p. 327), and March 5, 1878 (Laws, p.

233), the immunity from taxation conferred by said section was extended to and confirmed in the Natchez, Jackson & Columbus Railroad Company, and, while it was revoked by the code of 1880, it was restored by the act of March 12, 1884 (Laws, p. 29), and by the revenue act of 1890 (Laws, p. 6), this exemption was again recognized.

3. SAME. *Consolidation. Louisville, New Orleans & Texas Railroad Company. Exemption. How secured. Act* 1890.

The said Natchez, Jackson & Columbus Railroad Company was authorized, by the act of February 19, 1890 (Laws, p. 675), "to sell absolutely all or any part of its railroad and other property, . . together with all franchises, powers and immunities;" and, by the second section of said act, was authorized to consolidate with the Louisville, New Orleans & Texas Railroad Company, under the latter name. *Held,* the latter company, by its purchase or consolidation, acquired the franchises, rights, powers, privileges and immunities each company had before, and the affidavit required to secure exemption from taxation on what was the Natchez, Jackson & Columbus Railroad could be made by the corresponding officer of the consolidated company.

4. SAME. *Exemption. How lost. Provision of original charter.*

Upon such purchase or consolidation, the remote contingency on which the said exemption from taxation should be lost, namely, if the earnings should exceed eight per cent., was intended by the legislature either to be waived by the state or to become applicable whenever the annual earnings of the Natchez, Jackson & Columbus Railroad Company, as a component part of the Louisville, New Orleans & Texas Railroad Company, should amount to eight per cent.

5. SAME. *Yazoo & Mississippi Valley Railroad Company. Exemption from taxation.*

After consolidation of the Louisville, New Orleans & Texas Railway Company with the Yazoo & Mississippi Valley Railroad Company, the latter company succeeded to the said immunity from taxation on that part o its lines which formerly comprised the Natchez, Jackson & Columbus Railroad.

6. EXEMPTION FROM TAXATION. *Vested rights. Const.* 1890, § 181.

Said exemption from taxation is not affected by § 181, constitution 1890, declaring that the property of all corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals, for that section expressly provides that exemptions from taxation then existing should remain in force for the time fixed by charter or the general laws, unless sooner repealed by the legislature.

7. RES JUDICATA.   *Plea.   Former suit.   Decree not on merits.*

> To a bill by the Natchez, Jackson & Columbus Railroad Company, to en-
> join the collection of taxes, exemption from which it claims under its
> charter and other legislation, a plea of *res judicata* is bad that is founded
> upon a decree sustaining a demurrer to a similar bill filed by the Louis-
> ville, New Orleans & Texas Railway Company, claiming, under its pur-
> chase of the Natchez, Jackson & Columbus Railroad Company, the ben-
> efit of said exemption from taxation, it appearing from the plea that
> the affidavit as to the payment of the amount of taxes in the construc-
> tion of the railroad required to secure the exemption, contained no refer-
> ence to the Natchez, Jackson & Columbus Railroad, and that the bill
> in that case was therefore fatally defective.

FROM the chancery court of Adams county.

HON. CLAUDE PINTARD, Chancellor.

Appellant, the Natchez, Jackson & Columbus Railroad
Company, filed this bill against James W. Lambert, sheriff
and tax-collector of Adams county, to enjoin the collection
of *ad valorem* taxes, assessed against it for the years 1891
and 1892.   Said company claims exemption from all taxation
by virtue of its charter and under certain acts of the legisla-
ture, the material parts of which are stated in the opinion.
A similar bill was filed at the same time by appellant to en-
join the collection of privilege taxes, and, as the points of
law involved in both suits are the same, the two were heard
together.

Prior to the institution of these suits, the Louisville, New
Orleans & Texas Railway Company had filed its bill, in the
same county, to enjoin the collection of taxes claimed for the
year 1891, against that part of its lines which, before its pur-
chase of the Natchez, Jackson & Columbus Railroad, com-
prised that road.   To evidence its right to said exemption, it
filed, as an exhibit to its bill, the affidavit of its cashier that
the amount of taxes demanded had been applied to the pay-
ment of debts incurred in the construction of said road.   The
affidavit referred to the fact that the Louisville, New Orleans
& Texas Railway Company was formed by the consolidation
of the Memphis & Vicksburg Railway Company with several

other railway companies, under authority of acts of the legislature, but the affidavit makes no mention of the Natchez, Jackson & Columbus Railroad. The plea of *res judicata* recites, and by its exhibits shows, that the demurrer to this bill was sustained, and that an appeal, taken from the decree sustaining the demurrer, was pending in the supreme court.

The court below held that the plea of *res judicata* was good as to the taxes of 1891. It also sustained defendant's demurrers to the bills as to the taxes of 1892, and from these decrees complainant appeals.

*Mayes & Harris*, for appellant.

It was competent, under the constitution of 1869, for the legislature to confer upon the appellant exemption from taxation, but acts granting such exemptions were always subject to repeal. *Mississippi Mills* v. *Cook*, 56 Miss., 40. This condition of the law was recognized also in *McCulloch* v. *Stone*, 64 Miss., 378; *Railroad Co.* v. *Thomas*, 65 *Ib.*, 553; *Bank* v. *Worrell*, 67 *Ib.*, 47; *Attala County* v. *Kelly*, 68 *Ib.*, 40; *Railway Co.* v. *Taylor*, 68 *Ib.*, 361.

It cannot be said that § 181 of the constitution of 1890 operates as a repeal of this exemption. It expressly saves rights then existing. Although the legislature, in granting exemptions, did not part with its right to repeal them, it has never done so in this case.

The immunity was not lost by the sale to the Louisville, New Orleans & Texas Railway Company. By this sale the latter company acquired all the privileges and rights granted by § 21 of the charter of the Mobile & North-western Railroad Company. *Railway* v. *Taylor*, *supra*. Besides, the Louisville, New Orleans & Texas Railway Company possessed all the rights and franchises of the several companies out of which it had been formed, and among these was the right to purchase any connecting road, and, in so doing, to acquire all the benefits, rights and franchises of said road or company. Laws 1882, p. 932. This power also came to said railroad

company by its organization. The matter is set at rest by §1 of the act of February 19, 1890, which expressly authorized the Natchez, Jackson & Columbus Railroad Company to sell all or any part of its railroad, together with its franchises, rights, powers and immunities. And by §2 of said act it was expressly authorized to consolidate with the Louisville, New Orleans & Texas Railway Company. We may concede that a privilege or exemption does not, in the absence of legislative sanction, pass to a purchaser, but when such sanction is given, as we contend was done in this case, the immunity in question passes to the purchaser. The words used are more than sufficient to pass the exemption claimed. 16 Wall., 344; 3 Fed. Rep., 266; 24 *Ib.*, 614; 109 U. S., 244; 146 *Ib.*, 279. It is true that in the federal cases there is a controversy over the force of the word privileges, dissociated from any text bearing out the claim of continued exemption, but in a case like this the immunity from taxation passes to the purchaser, as is settled by the case of *Tennessee* v. *Whitworth*, 117 U. S., 139, and on this case we mainly rely. If the terms used are not sufficient to embrace exemption from taxation, then the Natchez, Jackson & Columbus Railroad Company itself never had it, for by these words the right claimed, and subsequently recognized by the legislature, was conferred upon that company. This is not a case where railroad property is alienated from a favored company into the hands of one not so favored. Both companies possessed the privilege or exemption.

This immunity was not lost by the consolidation of the Louisville, New Orleans & Texas Railway Company with the Yazoo & Mississippi Valley Railway Company. The latter company had authority by its charter to consolidate with any other railroad company, and, by the contract of consolidation, it was expressly provided that all the rights, powers, privileges, immunities and franchises belonging to either company should be vested in the consolidated company.

(Counsel for appellant here reviewed at great length all the

cases relied on by appellee touching this branch of the case, contending that this case is controlled by the decision and reasoning in the case of *Tennessee* v. *Whitworth, supra.*)

The plea of *res judicata* was insufficient, and not sustained. The affidavits exhibited with the bill alleged disbursements on account of the construction of a railroad other than the Natchez, Jackson & Columbus Railroad. Moreover, the bill in that case was filed by different parties, and alleges a different state of facts.

*Frank Johnston,* attorney-general, for appellee.

The immunity granted by § 21 of act of July 20, 1870, was, in effect, if not technically, a conditional exemption from taxation, the conditions being (1) that it should not continue for more than thirty years; (2) that it should cease when the earnings of the company amounted to eight per cent.; (3) that each year a sum equal to the taxes should have been paid on debts incurred for construction. Such an immunity is a clear conditional limitation upon the taxing power of the state. *Railroad Company* v. *Maine,* 96 U. S., 499. The statute *in form* makes the dedication of the taxes to the railroad company, but, in fact, no taxes were to be paid. It was essentially an exemption from taxation. The power to donate public moneys, and the power to tax, are distinct. But transposition of terms, and the ingenious employment of particular phraseology, cannot confuse or confound the substantial thing accomplished by this statute. The purpose was, obviously, to evade the constitutional provision then in force declaring that property of corporations should be subject to taxation, and, by calling this immunity an appropriation, to make it irrepealable as a contract. This the legislature could not do. *Mississippi Mills* v. *Cook,* 56 Miss., 40. This exemption was clearly repealed by the code of 1880, and it is a serious question whether the act of 1884 revived exemptions that had been repealed by that code, and were not existing at the time of the adoption of the act, or whether it merely

operated to preserve exemptions then in force. Under the rule of strict construction universally applied to statutes granting exemptions, it would seem that the act of 1884 did not revive exemptions that had been repealed. This reason applies, also, to the act of 1890.

The general rule is that exemption from taxation is the personal privilege of the corporation to which it is granted, and perishes with that corporation, unless the clear and express intention of the law requires the exemption to pass as a continuing franchise to a successor. *Railroad Co.* v. *Commissioners*, 112 U. S., 609; *Picard* v. *Railroad Co.*, 130 U. S., 637. These cases also establish that the language used in § 1, act of February 19, 1890, cannot pass the exemption by the sale therein contemplated. The second section of said act, which provides for consolidation, is silent as to the transfer of the exemption to the new corporation contemplated. If the two companies had consolidated under the second section, the consolidated company would not have acquired the exemption from taxation. *Railroad Co.* v. *Maine, supra; Railroad Co.* v. *Berry*, 113 U. S., 465. It will thus be seen that the Louisville, New Orleans & Texas Railway Company claims to have acquired, by purchase, an exemption it could not have acquired under the consolidation.

The exemption from taxation claimed by the Louisville, New Orleans & Texas Railway Company for its own road and property did not pass to the Yazoo & Mississippi Valley Railway Company by the consolidation made in 1892. Upon the extinction of the former company, all exemptions enjoyed by it ceased. The immunity from taxation was not transmissible. 18 Wall., 206; 93 U. S., 217; 103 *Ib.*, 421; 109 *Ib.*, 244.

*K. Palmer Lanneau*, on the same side,

Filed a brief limited to the discussion of the question of *res judicata*, and, in support of the plea, contending that the question was open to inquiry and within the scope of the

pleading in the former suit brought by the Louisville, New Orleans & Texas Railway Company, and, in support of this contention, cited Story Eq. Pl., § 736–738; 7 Wall., 102.

Argued orally by *E. Mayes*, for appellant, and *K. Palmer Lanneau* and *Frank Johnston*, attorney-general, for appellee.

CAMPBELL, C. J., delivered the opinion of the court.

It was not known what interpretation would be put on § 13, article 12, of the constitution of 1869, and § 21 of the act to incorporate the Mobile & North-western Railroad Company, approved July 20, 1870 (Laws 1870, p. 255), was a device to meet an assumed view of that section of the constitution. It took the form of an irrepealable (?) agreement by the state with the company, that all taxes to which it might be subject for thirty years should be applied to payment for constructing said road, or debts incurred for that; and that the affidavit of the president or cashier of the company that such application had been made during the year, should be accepted by tax-collectors in lieu of money for such taxes. A proviso is to the effect that, whenever the profits of the company should enable it to pay an annual dividend of eight per cent. upon its capital stock, the foregoing agreement should terminate. Although this was a thin disguise to evade constitutional restraint apprehended to be contained in the section mentioned, it was resolved to secure the benefit of the provision to other railroad companies; and, on August 8, 1870, an act of the legislature was approved to extend the provisions of the twenty-first section of the act to incorporate the Mobile & North-western Railroad Company to several other companies, and, among them, to the Natchez & Jackson Railroad Company, which afterwards became the Natchez, Jackson &' Columbus Railroad Company, and they were, by said act, declared to be entitled to "all the rights, privileges, immunities and franchises" granted by said twenty-first section. By act approved Feb-

ruary 25, 1875 (Laws, p. 66), every railroad company in the state was required to pay a privilege tax; and, on March 5, 1878 (Laws, p. 233), an act was approved, which recites the act of August 8, 1870, cited above, and that doubt as to its validity, because of its history, existed, and, to put the matter beyond doubt as to this, the twenty-first section aforesaid was re-enacted and applied to the charter of the Natchez, Jackson & Columbus Railroad Company. In 1878 this court interpreted § 13, article 12, of the constitution of 1869, to mean that the property of corporations for pecuniary profit could not be placed beyond the reach of the taxing power; that the legislature could forbear, during pleasure, to tax, but could, at any time, revoke a grant of immunity from taxation contained in any act passed since the adoption of the constitution of 1869. *Mississippi Mills* v. *Cook*, 56 Miss., 40.

By the code of 1880, each railroad in the state was subjected to taxation; but, in 1884, by act of March 12 (Laws of 1884, p. 29), the code was amended so as to restore to the Natchez, Jackson & Columbus Railroad Company the exemption from taxation " provided in its charter, and acts amendatory thereof." It is worthy of remark, that this act characterizes the exemption as " from taxation," as plainly it was. The revenue act of 1890 continues this exemption to railroads entitled to it (Laws 1890, p. 6). It was in the power of the legislature at any time to annul the agreement contained in the twenty-first section aforesaid. It had complete control of the matter, and could revoke the provision for immunity from paying taxes, which is undoubtedly immunity from taxation, for *paying is the burden.* Instead, it manifested a determination to preserve this immunity, and restored it to the Natchez, Jackson & Columbus Railroad Company in 1878 and 1884, and guarded it against repeal by act of 1890, as shown above, and, by act approved February 19, 1890 (Laws, p. 675), said company was authorized " to sell absolutely all or any part of its railroad and other property, . . . together with all franchises, rights, powers, privileges and im-

munities," etc.; and, by the second section of said act, the Louisville, New Orleans & Texas Railway Company and the Natchez, Jackson & Columbus Railroad Company were authorized to consolidate with each other, under the name of the former, *upon such terms as they might agree upon.*

The question is as to the *intent* of the legislature as to the continuance of the immunity from taxation it enjoyed after a sale by the Natchez, Jackson & Columbus Railroad Company, or consolidation, as authorized. It is not a question of legislative power, for that is undoubted. Nor are the considerations which justly cause courts to lean against a grant of immunity from taxation, so influential here as they often are, for there can be no danger of tying the hands of the taxing power. It is merely a question of legislative purpose deducible from the language employed, considered in connection with the history of the dealing with the subject by the legislature. Thus considered, we have no hesitation to declare that the intention of the legislature was that a purchaser should get the railroad just as held by the Natchez, Jackson & Columbus Railroad Company, with all franchises, rights, powers, privileges and immunities possessed by it under the previous legislation; and, in authorizing consolidation by the two companies named, the purpose was that the united company should enjoy the franchises, rights, powers, privileges and immunities each had before; and that the state, in consenting thus, must be held to have contemplated that the affidavit to evidence the application of money to pay for construction, which was to be a legal tender for taxes, might be made by the proper officer of the consolidated company; and, as to the remote contingency on which the arrangement to escape the burden of taxation was to cease to be operative, the state may be justly assumed to have intended to waive that condition, or else, to have looked to its right to claim a cessation of the immunity when the condition mentioned in the proviso of the twenty-first section mentioned, should exist as to the Natchez, Jackson &

Columbus Railroad as a component part of the consolidated company. But it is to be remembered that the state was not parting with any thing, was renouncing no right, foregoing nothing, except for the time being, to let matters stand as they were, and by the light of this its act is to be interpreted.

This case is very unlike *Railroad* v. *Maine*, 96 U. S., 499. There the right of the State to tax was involved, and important requirements made of the several companies which, by consolidation, made a *new* company, of which no requirement was made with reference to those duties imposed on the separate companies, having reference to taxation, and the new company was held subject to the power of the state to tax. Nothing was required of the Natchez, Jackson & Columbus Railroad Company on this subject, but it had the privilege to pay taxes by a prescribed affidavit, which could be as well made by an officer of a new company, having control of it, as by one of the Natchez, Jackson & Columbus Company. And, as to the very remote contingency mentioned in the proviso, that could be availed of as well under new control as under the old. The substantial thing aimed at was to free the road from taxation for thirty years by the easy terms of making an affidavit. But, in truth, all knew this was mere grace, and could be withdrawn at will. The delusion that the restriction of the constitution could be escaped by the circuity employed in the twenty-first section of the charter of the Mobile & North-western Railroad Company had been dispelled by the authoritative utterance of this court, and the legislature was willing for the immunity to stand as before until a future day, when it should see proper to put an end to it. Favor had been shown to the Natchez, Jackson & Columbus Railroad Company, and it was intended that it should be as before in the hands of a purchaser, or in union with the Louisville, New Orleans & Texas Railway Company. It was known the state would lose nothing, and it was supposed that the interest of the state would be promoted by a transfer as authorized.

We approve the doctrine so well put in *Tennessee* v. *Whitworth,* 117 U. S., 139, and find it much more applicable to this case than *Railroad* v. *Maine,* 96 U. S., 499, is.

If the words " rights, privileges and immunities," used in the act of 1890, authorizing sale or consolidation of the Natchez, Jackson & Columbus Railroad Company, do not include its immunity from taxation, it would be difficult to pass it, except by an express declaration that exemption from taxation should be among the rights, privileges and immunities to be transferred.   Especially must these words be held to include the immunity from taxation when they are the very words used in the act of the legislature by which the immunity granted by the twenty-first section of the charter of the Mobile & North-western Railroad Company was extended to the Natchez, Jackson & Columbus Railroad Company and other companies.   Laws 1870, p. 327.

We think it clear that the immunity possessed by the Natchez, Jackson & Columbus Railroad Company was not lost by its sale and consolidation, which was expressly authorized, and that, as to this, every thing remained as before.

By their charters, the Louisville, New Orleans & Texas Railway Company and the Yazoo & Mississippi Valley Railway Company were empowered to consolidate, and the immunity claimed by the Louisville, New Orleans & Texas Railway Company, for the right to pay the taxes on what was the Natchez, Jackson & Columbus Railroad Company, was not lost by its merger in the Yazoo & Mississippi Valley Railway Company, but it went into that company with all its rights, privileges and immunities as far as could be in the merger, and nothing was lost thereby, except as necessarily resulted from the union.

Section 181 of the constitution of 1890 has no effect as to the exemption claimed.   It left the matter as if the constitution had not been adopted.   It let it alone, to rest upon legislation, unaffected by the fundamental law.

The plea of former adjudication was bad.   The suit in

which a decree dismissing the bill was rendered and relied on as an adjudication, or as a pending suit, was fatally defective. The complainant could not take any benefit from it. It was founded on an affidavit pleaded as a tender for the taxes of 1891, which had no reference to the Natchez, Jackson & Columbus Railroad, but to a different one. The demurrer to the bill was rightly sustained on this ground, and the decree sustaining the demurrer and dismissing the bill in that case, now here on appeal, will be affirmed.

We reverse the decrees made in this case sustaining the plea and the demurrer, and dismissing the bill, and remand the case for further proceedings in the court below in accordance with this opinion. The defendant may answer within thirty days after mandate filed in the chancery court.

*Reversed and remanded.*